IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| LEANNA L. LOWE (F.K.A. LEANNA L. BURTON), INDIVIDUALLY AND AS MOTHER AND NEXT FRIEND OF LEARA LOWE, DECEASED, | ) ) ) ) ) | |
| Plaintiff, | ) | Case No. _____ |
| v. | ) | Jury Demanded |
| | ) | |
| ASHISH MADHOK, M.D., and TRI-CITY PEDIATRIC CARDIOLOGY, P.C., | ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, LeAnna L. Lowe, formerly known as LeAnna L. Burton, individually and as Mother and Next Friend of LeAra Lowe, deceased, and for her Complaint against Defendants states as follows:

### I. Parties and Jurisdiction

1. Plaintiff LeAnna L. Lowe is a citizen and resident of the Commonwealth of Virginia. She is the mother and next-of-kin of LeAra Lowe, deceased. She is authorized to bring this action pursuant to the provisions of Tenn. Code Ann. §§20-5-102, 20-5-106, and 20-5-107.

2. Plaintiff's decedent, LeAra Lowe, was born on December 13, 2007 and died on March 4, 2008. At all times during her life and at the time of her death she was domiciled in the Commonwealth of Virginia.

3. Dr. Ashish Madhok, M.D. is a physician licensed and practicing in the specialty of pediatric cardiology in the State of Tennessee. He is a citizen and resident of the State of

1

Tennessee. At all times relevant to this action, he was employed by Defendant Tri-City Pediatric Cardiology, PC, and his actions as described herein were taken in the course and scope of his employment. He may be served with process at 935 Wilcox Court, Suite 150, Kingsport, TN 37660.

4. Tri-City Pediatric Cardiology, PC is a professional corporation organized and existing under the laws of the State of Tennessee, and having its principal place of business in the State of Tennessee. It may be served through its registered agent for service of process, Ashok V. Mehta, at 2312 Knob Creek Road, Suite 208, Johnson City, TN 37604.

5. Subject matter jurisdiction is proper in this Court pursuant to the provisions of 28 U.S.C. §1332. There is complete diversity of citizenship between all Plaintiffs and all Defendants, and the amount in controversy exceeds $75,000.00, exclusive of costs and interests.

6. Personal jurisdiction is proper in this Court, as all Defendants are citizens and residents of this district and the State of Tennessee.

7. Venue is proper in this Court pursuant to the provisions of 28 U.S.C. §1391(a)(1) and (2).

## II. Procedural History and Statutory Requirements

8. This action was previously filed on April 2, 2009 in this Court, and was assigned Case No. 2:09-cv-60. The case was voluntarily dismissed without prejudice on April 2, 2009, and the appropriate notice under Tennessee and federal law was provided to Defendants.

9. Plaintiff complied with the requirements of Tenn. Code Ann. § 29-26-121(a) with regard to the filing of the action on April 2, 2009 by providing Defendants with the required notice at least sixty days before that action was filed.

10. On July 1, 2009, the provisions of Tenn. Code Ann. § 29-26-121 were amended, as were other provisions of the Tennessee statutes governing medical malpractice claims.

11. In the absence of case law as to whether the notice provided at least sixty days before the filing of the action on April 2, 2009 is sufficient to meet the notice requirements with regard to the re-filing of the action via this Complaint, and out of an abundance of caution, Plaintiff sent new notices to the Defendants on August 31, 2009 in compliance with Tenn. Code Ann. § 29-26-121(a), as amended on July 1, 2009, more than sixty days before the filing of this Complaint. Plaintiff has therefore complied with Tenn. Code Ann. § 29-26-121(a), and, pursuant to Tenn. Code Ann. § 29-26-121(b), attaches hereto as Exhibit A the required documentation.

12. Under the version of Tenn. Code Ann. § 29-26-122 in effect at the time the prior action was filed on April 2, 2009, Plaintiff was not required to file a Certificate of Good Faith along with the Complaint, but rather had ninety days after filing to do so. Under the current version of Tenn. Code Ann. § 29-26-122, as amended on July 1, 2009, Plaintiff is required to file the Certificate of Good Faith along with the Complaint. Plaintiff has complied with this statute by filing herewith the Certificate of Good Faith attached as Exhibit B.

### III. Facts

13. On December 13, 2007, LeAra Lowe was born via a spontaneous delivery.

14. On December 15, 2007, LeAra was discharged from the hospital with her mother.

15. On December 20, 2007, LeAra was seen by her pediatrician.

16. The pediatrician noted that LeAra looked a little jaundiced and he thought that she had a heart murmur.

17. The pediatrician referred LeAra to Dr. Madhok for a work-up of her condition.

18. On December 26, 2007, LeAra was seen by Dr. Madhok.

19. Dr. Madhok performed a 2-D echocardiogram on LeAra and he interpreted it as showing, in pertinent part, a dysplastic appearing pulmonic valve with moderate pulmonic stenosis.

20. Dr. Madhok diagnosed LeAra with dysplastic pulmonic valve with moderate pulmonic stenosis, mild peripheral pulmonic stenosis of infancy and small for gestational age baby.

21. Dr. Madhok's plan was to see LeAra back in the office in about two weeks time.

22. On January 2, 2008, LeAra saw her pediatrician and due to her condition, the pediatrician immediately contacted Dr. Madhok.

23. The pediatrician told Dr. Madhok about LeAra's condition and Dr. Madhok asked that LeAra come the next morning for evaluation.

24. On January 3, 2008, Dr. Madhok saw LeAra and he performed another echocardiogram on her.

25. Dr. Madhok interpreted this echocardiogram as showing, in pertinent part, tricuspid atresia (tricuspid atresia type IB), moderate sized secundum atrial septum defect with right-to-left flow and inlet unrestricted small ventricular septal defect.

26. In addition, Dr. Madhok performed oxygen saturations on LeAra and found that her foot oxygen saturation was 62 and her hand oxygen saturation was 59.

27. Dr. Madhok re-reviewed LeAra's echocardiogram that he performed and interpreted on December 26, 2007.

28. Upon re-review of LeAra's December 26, 2007 echocardiogram, Dr. Madhok realized that he had mis-read it because it showed, among other things, tricuspid atresia type IB.

29. Dr. Madhok went back to his December 26, 2007 office records for LeAra and hand wrote his re-interpretation of LeAra's December 26, 2007 echocardiogram.

30. Dr. Madhok ordered that LeAra be admitted to the hospital for IV hydration, as well as to have by mouth feeds *ad lib* as well.

31. On January 3, 2008 around 11 a.m., Dr. Susan Jeansonne, a pediatrician, admitted LeAra to the pediatric intensive care unit at the hospital in guarded condition.

32. Upon admission, LeAra was found to have oxygen saturations in the 50s and 60s and she was placed on oxygen to keep her oxygen saturations in the 70s.

33. Dr. Madhok instructed the nurses that it was okay to leave LeAra on room air for oxygen saturations in the 60s and 70s.

34. Around 1 p.m., Dr. Madhok consulted on LeAra and his diagnoses were tricuspid atresia, moderate size ASD, a left VSD, moderate pulmonic stenosis with normally related great vessels (type IB tricuspid atresia); increased cyanosis; and dehydration and poor feeding.

35. Dr. Madhok thought that a BT shunt was needed as a stable source of permanent blood flow to prevent hypoxemia in the future and that LeAra should have a surgical consultation in the early part of next week.

36. Around 6 p.m., Dr. Jeansonne saw LeAra and found that LeAra's oxygen saturations were in the 60s and 70s.

37. Around 7:45 p.m. Dr. Madhok was informed by the nurse that LeAra's oxygen saturations were bouncing from the 30s to the 50s and that oxygen supplementation was providing only some improvement in LeAra's oxygen saturations.

38. Dr. Madhok instructed the nurse to continue to provide oxygen supplementation to LeAra.

39. Around 8 p.m. the nurses contacted Dr. Jeansonne about concerning LeAra's laboratory studies and the fact that LeAra's oxygen saturations were bouncing from the 30s to the 50s.

40. The nurse discussed with Dr. Jeansonne oxygen delivery systems and then the nurse contacted pediatric cardiology.

41. Around 8:40 p.m. on January 3, 2008, Dr. Madhok's partner, Dr. Teixeira, saw LeAra and he placed LeAra on an oxygen system at 6 liters at 100%.

42. Around 10 p.m. on January 3rd, Dr. Teixeira was contacted because LeAra was cyanotic and not improving with oxygen.

43. On examination, Dr. Teixeira found LeAra to be critically ill, pale and cyanotic.

44. Dr. Teixeira contacted another medical institution which accepted LeAra in transfer.

45. LeAra was intubated, placed on a ventilator, and given various medications including Morphine and Versed.

46. On January 4, 2008, Dr. Jeansonne told LeAra's mother that LeAra was unlikely to survive due to her critical condition and even if LeAra did survive, LeAra was expected to have neurologic morbidity.

47. When LeAra was accepted by the transport team, her oxygen saturations were in the 20s, her heart rate was 123, and her systolic blood pressure was in the 40s.

48. LeAra's condition on transfer was critical.

49. When LeAra arrived at the other medical institution, she was in extremis.

50. On March 4, 2008, LeAra died in her mother's arms.

6

51. Dr. Madhok owed a duty to LeAra Lowe to act in accordance with the recognized standards of acceptable professional practice in his profession and specialty in his community at the time of his treatment. He deviated from that standard and breached that duty by:

   a. failing to timely diagnose LeAra's condition.

   b. failing to properly interpret LeAra's echocardiograms.

   c. failing to timely and properly treat LeAra's condition.

   d. failing to properly investigate LeAra's condition.

   e. failing to ensure that LeAra received immediate treatment for her condition.

   f. failing to ensure that LeAra was immediately transferred to a facility with the capability to treat LeAra's condition.

   g. failing to timely consult specialists for LeAra's condition.

   h. failing to properly communicate with LeAra's health care providers.

   i. failing to timely communicate with LeAra's health care providers.

   j. failing to act as a reasonable and prudent health care provider should have acted under the same or similar circumstances when he knew, or should have known, that such substandard care and treatment would cause, or would likely cause, serious injury to or the death of LeAra Lowe.

52. The foregoing acts and omissions of Dr. Madhok described herein constitute deviations by him from the recognized standard of acceptable professional practice in his profession and his specialty thereof in the community in which he practiced at the time of the injuries to LeAra Lowe. Dr. Madhok acted with less than or failed to act with ordinary and reasonable care in accordance with this standard.

53. The acts and omissions of Dr. Madhok as described herein and the care provided by him to LeAra Lowe were acts performed within the course and scope of his employment with Tri-City Pediatric Cardiology.

7

54. Pursuant to the doctrine of respondeat superior, Defendant Tri-City Pediatric Cardiology, PC is liable for the acts and omissions of its employee and agent, Dr. Madhok.

55. As a proximate result of the Defendants' negligent acts or omissions, LeAra Lowe suffered injuries which would not otherwise have occurred. The negligent acts or omissions of Defendants as described above caused or contributed to the injuries suffered by LeAra Lowe, including her death on March 4, 2008.

### IV. Causes of Action and Damages

56. As a result of the conduct described above, the Defendants are liable for injuries to LeAra Lowe including, but not limited to:

   a. worsening of her cardiac condition;

   b. hypoxia;

   c. cyanosis;

   d  dehydration;

   e. respiratory failure;

   f. renal insufficiency;

   g. acidosis;

   h. pain;

   i. hypotension;

   j. neurological compromise; and

   k. her wrongful death on March 4, 2008.

57. Defendants are also liable to Plaintiff for damages sufficient to compensate her for medical expenses, lost wages, out-of-pocket expenses, and funeral and burial expenses incurred as a result of the injuries to and wrongful death of LeAra Lowe.

8

58. These injuries were proximately caused by or contributed to by the deviation by Dr. Madhok from the recognized standard of professional practice of his profession and his specialty thereof as described herein. But for this negligence, these injuries would not have occurred.

59. Defendants are liable to Plaintiff for compensatory damages in the amount of $5,000,000.00.

WHEREFORE, Plaintiff LeAnna L. Lowe, individually and as mother and next friend of LeAra Lowe, deceased, demands the following relief:

    a. Judgment against the Defendants, jointly and severally, in the amount of $5,000,000.00.

    b. That this matter be tried to a jury.

    c. Pre-judgment interest, post-judgment interest, and discretionary costs.

    d. All other and further relief to which she is entitled.

Respectfully submitted this 17th day of November, 2009.

Travis J. Graham, Esq. (TN BPR No. 019402)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P.O. Box 40013
Roanoke, VA 24022-0013
Phone: (540) 983-9300
Fax: (540) 983-9400
travis_graham@gentrylocke.com

*Counsel for Plaintiff*